# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-15-00144-CR

Christopher Arthur Kurtz, Appellant

v.

The State of Texas, Appellee

### FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
### NO. CR2014-343, HONORABLE JACK H. ROBISON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found Christopher Arthur Kurtz guilty of aggravated kidnapping, evading arrest with a vehicle, and tampering with physical evidence. The jury assessed prison terms of 70 years for aggravated kidnapping, 75 years for evading arrest with a vehicle, and 30 years for tampering with evidence, and the trial court ordered all the sentences to run concurrently. By his sole issue on appeal, Kurtz challenges the sufficiency of the evidence to support the aggravated kidnapping offense. His attorney filed an *Anders* brief asserting that the appeal was frivolous with respect to the evading and tampering offenses. We will affirm the judgment.

## BACKGROUND

Kurtz picked up a friend, April Sanchez, on his motorcycle to take her to her new job. New Braunfels Police Sergeant James Bell, who intended to serve an arrest warrant on Kurtz, began following them and activated his emergency lights. Officer Andrew Kempker testified that Kurtz

initially slowed, then accelerated at a high rate of speed. Kurtz testified that he knew he was being pursued by police officers, but was unsure whether they had the right to detain him. They passed Sanchez's workplace during the chase. Several officers joined the pursuit. Video from a police car showed Kurtz traveling at more than 100 miles per hour, running a red light by passing between stopped cars, passing a car by driving on grass, and weaving in and out of traffic at a high speed. NBPD's Bell testified that Kurtz used the motorcycle in a way that could have caused death or serious bodily injury to Sanchez and others. An NBPD supervisor discontinued the chase. Sometime after the chase stopped, Kurtz let Sanchez off the motorcycle in Schertz, a nearby town.

Later that day, Kurtz was captured. Officers found a gun and keys on top of the gun near where he was found. Kurtz admitted to having and attempting to hide the gun but stated that Sanchez had put it in his pocket during the ride and advised him to avoid the police. Kurtz told police during an interview that Sanchez wanted to risk her life in his escape. In recordings of a jailhouse visit with friends, Kurtz said that Sanchez was scared, beating him in the ribs, and wanting to stop. He said he told her he was not stopping until he lost the police.

Sanchez testified that she did not tell Kurtz to run from the police, but asked him to let her off near a gas station. She said he agreed and slowed to let her off, but then sped away. She testified that she continued to ask him to stop, but he did not let her off until the chase ended. During her police interview, Sanchez told police that Kurtz drove into oncoming traffic and that she thought they were going to wreck and die. She testified that she did not want to travel at 100 miles an hour on the highway and was not free to go. She testified that she knew Kurtz was running from the police, not trying to keep her. She also testified that Kurtz was a friend to whom she did not want anything bad to happen.

2

## DISCUSSION

Kurtz contends that insufficient evidence supports the jury's verdict that he committed aggravated kidnapping. The State was required to show that he intentionally or knowingly abducted Sanchez and used or exhibited a deadly weapon during the commission of the offense. *See* Tex. Penal Code § 20.04(b). Abduction as charged in this case requires proof that Kurtz restrained Sanchez with intent to prevent her liberation by using or threatening to use deadly force. *Id.* § 20.01(2)(B). A person restrains another when he restricts her movements without consent so as to interfere substantially with her liberty by moving her from one place to another; restraint is without consent if it is accomplished by force, intimidation, or deception. *Id.* § 20.01(1).

We assess the sufficiency of the evidence to support a conviction by viewing the evidence in the light most favorable to the verdict and deciding whether any rational trier of fact could have found each essential element of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 320 (1979); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). The jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 899. The fact finder can believe all, some, or none of the testimony presented. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). Circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). When the record evidence contains conflicting inferences, the appellate court must presume that the jury resolved any conflicts in favor of its verdict. *Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014).

Kurtz focuses on elements that relate to his mindset. He contends that there was no evidence that he used or threatened deadly force to compel Sanchez's obedience to a threat, noting

3

that specific intent distinguishes kidnapping from restraint. *See Mayer v. State*, 274 S.W.3d 898, 899-900 (Tex. App.—Amarillo 2008, pet. ref'd). In that case, a husband who assaulted his wife, then forced her to drive him away from the scene of the assault, argued that he restrained her but did not kidnap her because he merely wanted to escape and did not intend to prevent her liberation by holding her in a place where she would not be found. *Id.* The court held that, by forcing her to drive him to a place where he would not be found, he necessarily intended to take her to a place where she would not be found. *Id.* at 901. Kurtz argues that, at most, he placed a once-willing rider into a dangerous situation. Unlike the abducted wife in *Mayer*, Sanchez testified that she did not fear Kurtz because she knew that he did not intend to prevent her liberation and that she would be released when he escaped the police. Kurtz also asserts that Sanchez did not attempt to leave his company.

We conclude, however, that the record contains evidence from which a reasonable jury could have found the elements of the offense beyond a reasonable doubt. The trial court instructed the jury that it could convict Kurtz for attempting to hold her in a place where she would not be found as in *Mayer*, *see id.*, or by preventing her liberation by use of deadly force. *Compare* Tex. Penal Code § 20.01(2)(A) (holding in a secret place) *with id.* § 20.01(2)(B) (using deadly force). Sanchez got on the motorcycle willingly to get to work at a restaurant in New Braunfels, but Kurtz took her to a different town. She testified that she did not want to travel at high speeds on the freeway running from police. Sanchez said that she was scared and directed Kurtz to stop, but he did not. Early on, he slowed to let her off, but sped up before she could do so. She testified that they were traveling too fast for her to safely jump off the motorcycle. The jury saw video of the chase further supplemented by NBPD Sergeant Bell's testimony that Kurtz used the motorcycle in a way that could have caused death or serious bodily injury to Sanchez and others. Although

4

Sanchez testified that she knew Kurtz would release her, the evidence also showed that despite her repeated and acknowledged pleas for him to stop and let her off, Kurtz drove his motorcycle so fast that she could not get off and took her to a nearby town instead of her workplace. These facts resemble the facts of *Mayer* in which the court found that Mayer, by intentionally taking his wife on his escape, had the requisite intent to take *her* to a place where she would not be found. *See Mayer*, 274 S.W.3d at 901. Further, we cannot say that no reasonable jury could find that the evidence proved beyond a reasonable doubt that Kurtz restrained her with the intent to prevent her liberation by use of deadly force of speed on the motorcycle and dangerous maneuvers while driving. *See id*. § 20.01(2)(B). Likewise, the record supports the jury's decision that Kurtz intentionally or knowingly abducted her while using the motorcycle as a deadly weapon. *See id.* § 20.04(b). We overrule Kurtz's sole issue on appeal.

With respect to the remaining counts of his conviction, Kurtz's court-appointed appellate attorney has filed a motion to withdraw supported by a brief concluding that this appeal is frivolous and without merit. The brief meets the requirements of *Anders v. California* by presenting a professional evaluation of the record demonstrating why there are no arguable grounds to be advanced. *See* 386 U.S. 738, 744 (1967); *see also Penson v. Ohio*, 488 U.S. 75, 80 (1988); *High v. State*, 573 S.W.2d 807, 811-13 (Tex. Crim. App. 1978). Kurtz's counsel stated that he sent a copy of the brief to Kurtz and advised him of his right to examine the appellate record and to file a pro se brief. *See Anders*, 386 U.S. at 744. More than thirty days have passed since the notice was sent to Kurtz and we have not received a pro se brief or a motion for extension of time to file a brief.

## CONCLUSION

We have reviewed the record and find no reversible error. *See Garner v. State*, 300 S.W.3d 763, 766 (Tex. Crim. App. 2009). We conclude that sufficient evidence supports the aggravated-kidnapping conviction, agree with counsel that the remainder of this appeal is frivolous, affirm the judgment of conviction, and grant counsel's motion to withdraw.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Pemberton and Field

Affirmed

Filed:   June 30, 2016

Do Not Publish